**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Casey E. Sadler (#274241)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  rprongay@glancylaw.com

[Additional counsel listed on signature page.]

*Attorneys for Plaintiff John DeVouassoux*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DEVOUASSOUX, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>            v.<br><br>RESONANT INC., TERRY LINGREN, and JOHN PHILPOTT,<br><br>                          Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff John DeVouassoux ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by RESONANT INC. ("Resonant" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Resonant; and (c) review of other publicly available information concerning Resonant.

## <u>NATURE OF THE ACTION AND OVERVIEW</u>

1.     This is a class action on behalf of those who purchased or otherwise acquired Resonant's securities between November 6, 2014 and February 26, 2015 inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Resonant creates filter designs for radio frequency ("RF") front-ends for the mobile device industry. The RF front-end is the circuitry in a mobile device responsible for analog signal processing and is located between the device's antenna and its digital baseband. The Company uses a technology called Infinite Synthesized Networks ("ISN") to configure and connect resonators, the building

blocks of RF filters.  Filters are a critical component of the RF front-end used to select desired radio frequency signals and reject unwanted signals.

3.     The Company's most important product development was an allegedly cutting edge design and production of a duplexer for a high volume band. The successful production of the duplexer was an important next step in demonstrating to Resonant customers, suppliers for mobile device manufacturers, the value and quality of Resonant products.

4.     On February 26, 2015, after the market closed, Resonant announced that it had delivered a completed duplexer design for consideration to its first customer.  According to the Company, the design unfortunately did not meet all the specifications in the development agreement and the customer's decision whether to use the design is beyond the Company's control.

5.     On this news, shares of Resonant declined $5.07 per share, nearly 33%, to close on February 27, 2015, at $10.40 per share, on unusually heavy volume.

6.     Throughout the Class Period, Defendants made false and/or misleading statements regarding the successful completion of the first duplexer product; as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company's duplexer

design failed to meet all of the agreed upon specifications with its first customer; (2) that the customer could refuse to accept Company's design; and (3) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in

substantial part in this Judicial District.   Additionally, Resonant's principal executive offices are located within this Judicial District.

11.   In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.   Plaintiff John DeVouassoux, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Resonant's common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.   Defendant Resonant is a Delaware corporation with its principal executive offices located at 110 Castilian Drive, Suite 100, Santa Barbara, California 93117.

14.   Defendant Terry Lingren ("Lingren") was, at all relevant times, Chief Executive Officer ("CEO") and a director of Resonant.

15.   Defendant John Philpott ("Philpott") was, at all relevant times, Chief Financial Officer ("CFO") of Resonant.

16.     Defendants Lingren and Philpott are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Resonant's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Resonant creates filter designs for RF front-ends for the mobile device industry.  The RF front-end is the circuitry in a mobile device responsible for analog signal processing and is located between the device's antenna and its digital

baseband. The Company uses ISN technology to configure and connect resonators, the building blocks of RF filters.  Filters are a critical component of the RF front-end used to select desired radio frequency signals and reject unwanted signals.

**Materially False and Misleading**
**Statements Issued During the Class Period**

18.    The Class Period begins on November 6, 2014.  On this day, Resonant issued a press release entitled, "Resonant Inc. Reports Third Quarter Financial Results and Provides Business Update."  Therein, the Company, in relevant part, stated:

Resonant Inc. (NASDAQ: RESN), a late-stage development company creating innovative filter designs for radio frequency, or RF, front-ends for the mobile device industry, today announced financial results and provided a business update for the third quarter ended September 30, 2014.

**Highlights and Business Update:**

Completed Milestone 3 and commenced work on the 4th and final Milestone for the Company's first single-band design, which is being developed in collaboration with a major customer.

Commenced development of a prototype tunable filter design.
Expanded the Company's patent portfolio to 40 issued and pending patents at September 30.

Management and employees of Resonant joined other existing stockholders in purchasing the minority position of Superconductor Technologies in a private block sale.

Continued to build out the senior management team with the addition of Mike Eddy as Vice President Marketing.

Previously, Mr. Eddy was VP, Cell Site Optimization Products at Westell Technologies. He also founded and served as President of ANTONE Wireless, which was a leader in 4G network infrastructure enhancement products. Mr. Eddy has a Ph.D. from Oxford University and an MBA from Pepperdine University.

Awarded the "Most Innovative Company of 2014 Award" by the Association for Corporate Growth (ACG) 101 Corridor Chapter at its "Deals of the Year" banquet held in Westlake Village, California in October. ACG 101 serves corporate executives and professionals in the West Valley-Ventura County-Santa Barbara areas and is the premier international organization for professionals involved in corporate growth, development and mergers & acquisitions.

Reported $15.7 million in cash and short-term investments at September 30, 2014 compared with $17.4 million at June 30, 2014, following the Company's initial public offering in May.

**Chief Executive Officer, Co-Founder and Chairman Terry Lingren, stated, "We are pleased to report that we completed Milestone 3 to our customer's satisfaction on our first development agreement. The duplexer we produced to meet this milestone exhibits competitive performance and represents a significant accomplishment for our engineering team. We now expect to complete Milestone 4 in the first quarter of 2015.**

**"We remain confident in our ability to deliver this duplexer design for a high volume band and demonstrate our value proposition to suppliers of RF front-ends for mobile devices. The improvement in our models and design tools on this initial design will also benefit all future projects by reducing the development time through efficiency gains," said Mr. Lingren.**

"In addition to this initial project, we are currently evaluating several single band opportunities and expect to have multiple projects underway in the first half of 2015. As planned, we also commenced development of a prototype tunable filter design. This prototype will demonstrate Resonant's value proposition for tunable filters, which

CLASS ACTION COMPLAINT
7

are capable of replacing multiple filters thereby significantly reducing size and cost of RF front-ends," Mr. Lingren concluded.

**Financial Results for the Third Quarter 2014 Compared with the Third Quarter 2013:**

> Research and development expenses were $623,000 compared with $459,000, due to accelerated activity on the Company's duplexer design currently under development.

> General and administrative expenses were $760,000 compared with $369,000, due primarily to increased payroll, benefit costs, directors and officers insurance, stock compensation expense and accounting costs.

> Operating loss totaled $1.4 million compared with $831,000, and primarily reflected increased R&D activities and G&A expenses consistent with planned growth.

> Interest expense totaled $10,000 compared with $559,000 in the third quarter of 2013 due to the repayment of the Bridge Loans in June 2013 and the conversion the Senior Convertible Notes and the Subordinated

> Convertible Note into common stock in connection with Resonant's IPO in June 2014, which eliminated discounts and deferred financing cost amortization in June 2014.

> The net loss totaled $1.4 million, or $0.21 per fully diluted share, compared with $1.2 million, or $1.23 per fully diluted share for the third quarter ended September 30, 2013.

> Working Capital improved to $15.4 million, compared with a working capital deficit of $8.8 million at December 31, 2013. The Company believes it has sufficient cash to support planned operations into 2016, even assuming no revenues.

[Emphasis added.]

19.    On November 12, 2014, Resonant filed its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal third quarter.  The Company's Form 10-Q was signed by Defendant Philpott, and reaffirmed the Company's statements previously announced on November 6, 2014.

20.    The statements contained in ¶¶18-19 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's design failed to meet all of the agreed upon specifications with its first customer; (2) that the customer could refuse to accept Company's design; and (3) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

### Disclosures at the End of the Class Period

21.    On February 26, 2015, after the market closed, Resonant issued a press release entitled, "Resonant Inc. Reports 2014 Financial Results and Provides Business Update."  Therein, the Company, in relevant part, stated:

> Resonant Inc. (NASDAQ: RESN), a late-stage development company creating innovative filter designs for radio frequency, or RF, front-ends for the mobile device industry, today announced financial results and provided a business update for the fourth quarter and year ended December 31, 2014.
>
> **2014 Highlights**
>
> Raised net proceeds of $16.2 million in an initial public offering

Made significant progress on the Company's first product design for a major customer

Commenced development of a prototype tunable RF filter design

Expanded the patent portfolio to more than 50 issued and pending patents

Built out the senior management team and added technical staff to the R&D team

Developed new software tools that have enhanced Resonant's filter design development capabilities

Moved into new offices and built an electronics laboratory

Chief Executive Officer, Co-Founder and Chairman Terry Lingren stated: "Last year was transformative for Resonant, as we accomplished a great deal toward the advancement of our technology and business model. In particular, our successful initial public offering provided the resources necessary to grow our uniquely talented development team as well as build out our ISN tool suite and laboratory facilities. These resources will enable us to have multiple projects underway simultaneously, a process we have already begun. We were also able to accelerate our patent filing activity, advance our first project and commence development of a prototype tunable filter design.

*"We have delivered a completed duplexer design for consideration to our first customer. Our design does not meet all the specifications in the development agreement, but we believe it delivers competitive performance, which we view as a major accomplishment. Our customer's decision whether to use our design is complex and based on a number of considerations, many of which are beyond our control."*

Bob Hammond, Ph.D., Resonant Co-founder and Chief Technology Officer, stated: "The explosion in the number of filters needed to address the communication bands in smartphones has created a major

growth opportunity for our customers and an increasing cost burden for their customers. What we find most exciting is the growing capabilities of our ISN technology platform and the opportunity to transform RF front-ends."

Lingren added: "We are evaluating several single band opportunities and are in active discussions with other potential customers. We are not limited by any single customer's interest in a particular filter design and expect to announce an additional customer in the first half of this year. We also see multiple opportunities to improve upon the design of traditional SAW filters, potentially augmenting our customers' capacity-constrained engineering teams. Looking ahead, we believe we will complete our prototype tunable filter, which can replace multiple filters and significantly reduce the size and cost of RF front-ends."

**Key Milestones for 2015 Include:**

Achieve design completion for the Company's first product design

Expand the Company's customer base and have multiple product development projects underway

Commence generating revenue

Complete the tunable prototype design

Double Resonant's technical staff to 20

**Full Year 2014 Financial Results**

Research and development expenses were $2.9 million for 2014, compared with $1.1 million in 2013. The increase of $1.8 million was the result of accelerated activity on the Company's duplexer design that is currently under development. There were no employees until late June 2013. As of December 31, 2014, there were 13 employees in R&D.

General and administrative expenses totaled $2.9 million in 2014, up from $1.6 million in 2013 primarily due to costs associated with increased staffing, including increased payroll, benefits, D&O insurance, finance costs, stock compensation and accounting expenses. The 2013 period included a non-cash charge of $0.7 million for the fair value of warrants issued for business consulting services. Excluding the effect of the warrant charges, general and administrative expenses for 2014 increased by $2.0 million.

Interest expense totaled $2.8 million in 2014, compared with $1.6 million in 2013. The increase was primarily due to the conversion of Notes into common stock in connection to the Company's IPO in May 2014.

Interest income totaled approximately $29,000 in 2014 compared with approximately $2,000 in 2013, primarily due to the increased cash balance from the net proceeds from the IPO.

The net loss totaled $9.7 million, or $2.16 per fully diluted share in 2014, compared with a net loss of $9.4 million in 2013.

Working Capital improved to $13.2 million at December 31, 2014, compared with a working capital deficit of $8.8 million at December 31, 2013. The Company believes it has sufficient cash to support planned operations into early 2016, even assuming no revenues.

[Emphasis added.]

22.    On this news, shares of Resonant declined $5.07 per share, nearly 33%, to close on February 27, 2015, at $10.40 per share, on unusually heavy volume.

## <u>CLASS ACTION ALLEGATIONS</u>

23.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired Resonant's securities between November 6, 2014 and February 26, 2015, inclusive and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Resonant's securities were actively traded on the Nasdaq Stock Market ("NASDAQ").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Resonant shares were traded publicly during the Class Period on the NASDAQ.  As of November 1, 2014, Resonant had 6,907,984 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Resonant or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in

securities class actions.

25.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Resonant; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members

may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

29.    The market for Resonant's securities was open, well-developed and efficient at all relevant times.   As a result of these materially false and/or misleading statements, and/or failures to disclose, Resonant's securities traded at artificially inflated prices during the Class Period.   Plaintiff and other members of the Class purchased or otherwise acquired Resonant's securities relying upon the integrity of the market price of the Company's securities and market information relating to Resonant, and have been damaged thereby.

30.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Resonant's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Resonant's business, operations, and prospects as alleged herein.

31.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Resonant's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## **LOSS CAUSATION**

32.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

33.    During the Class Period, Plaintiff and the Class purchased Resonant's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to

the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

34.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Resonant, his/her control over, and/or receipt and/or modification of Resonant's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Resonant, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

35.     The market for Resonant's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Resonant's securities traded at artificially inflated prices during the Class Period.    On February 11, 2015, the Company's

CLASS ACTION COMPLAINT

stock closed at a Class Period high of $19.05 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Resonant's securities and market information relating to Resonant, and have been damaged thereby.

36.     During the Class Period, the artificial inflation of Resonant's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Resonant's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Resonant and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

37.     At all relevant times, the market for Resonant's securities was an efficient market for the following reasons, among others:

(a)     Resonant stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, Resonant filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Resonant regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Resonant was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.    Each of these reports was publicly available and entered the public marketplace.

38.   As a result of the foregoing, the market for Resonant's securities promptly digested current information regarding Resonant from all publicly available sources and reflected such information in Resonant's stock price. Under these circumstances, all purchasers of Resonant's securities during the Class Period suffered similar injury through their purchase of Resonant's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

39.    The statutory safe harbor provided for forward-looking statements under certain  circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Resonant who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

40.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

CLASS ACTION COMPLAINT
20

41.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Resonant's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

42.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Resonant's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

43.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material

information about Resonant's financial well-being and prospects, as specified herein.

44.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Resonant's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Resonant and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

45.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections

and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

46.   The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Resonant's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

47.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Resonant's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Resonant's securities during the Class Period at artificially high prices and were damaged thereby.

48.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Resonant was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Resonant securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

CLASS ACTION COMPLAINT
24

49.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Resonant within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the

Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

54.    As set forth above, Resonant and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated:  March 19, 2015          **GLANCY BINKOW & GOLDBERG LLP**


By:  *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
Email:  rprongay@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff John DeVouassoux*

CLASS ACTION COMPLAINT
27

### SWORN CERTIFICATION OF PLAINTIFF

Resonant Inc., **SECURITIES LITIGATION**

I, John DeVouassoux, certify:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Resonant Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Resonant Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ____ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: March 4th, 2015          _____

**John DeVouassoux's Transactions in
Resonant, Inc (RESN)**

| Date | Transaction Type | Shares | Unit Price |
|------|------------------|--------|------------|
| 2/26/2015 | Bought | 1,380 | $15.40 |
| 2/26/2015 | Bought | 100 | $15.42 |